UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHOWKAT CHOWDHURY,

        Plaintiff,                   Case Number: 05-74564

v.                                          JUDGE PAUL D. BORMAN
                                             UNITED STATES DISTRICT COURT

WITZENMANN USA LLC,

        Defendants.
_____ /

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOCKET NO. 34)

Now before the Court is Defendant's Motion for Summary Judgment. The Court held a motion hearing on September 20, 2006. Having considered the entire record, and for the reasons that follow, the Court GRANTS Defendant's Motion for Summary Judgment.

**I.    FACTS**

In this action, Plaintiff Showkat Chowdhury ("Plaintiff"), a resident of Michigan, brought suit on December 1, 2005 against Defendant Witzenmann USA LLC ("Defendant"), a Michigan corporation, based on race discrimination under Title VII.

On June 23, 2006, Defendant filed the present Motion for Summary Judgment. Plaintiff filed his response on July 13, 2006, and Defendant filed its reply on August 11, 2006.

This controversy revolves around Plaintiff's termination by Defendant on January 6, 2005. (Compl. ¶ 16). Plaintiff is a South-Asian male born in Bangladesh. (Compl. ¶ 8). He

1

was hired by Defendant as a Laser CNC operator on August 2, 2004. (Compl. ¶ 9). Plaintiff's hourly wage at the time of hiring was $13.25 per hour. (Def.'s Br. Ex. C, Chowdhury Payroll/Status Change Notice). Plaintiff was given a raise to $13.70 per hour on December 2, 2004. (*Id*.).

On January 5, 2005, Plaintiff arrived on time for his shift, which began at 3:15 p.m. (Pl.'s Resp. 1). Plaintiff alleges he had a fever, back and muscle pain, and a skin problem in his groin area. (*Id*.). Plaintiff claims that he then told his line leader, Rick Cruce ("Cruce") that he was sick. (*Id*.). Cruce, according to Plaintiff's allegation, told him to shut down his machine, clock out, and go home. (*Id*.). Plaintiff subsequently left the premises.

Defendant was informed that Plaintiff left work when another employee, Shawn Thweatt, called Plaintiff's shift supervisor, Jody Teichow ("Teichow"), to report that she had seen Plaintiff leaving Defendant's property during work hours. (Def.'s Br. 5). Teichow contacted Cruce to find out if Plaintiff was still in the shop. (Def.'s Br. Ex. E, Cruce Dep. 19:13-15). Cruce thought that Plaintiff was in the front office complaining about a five cent raise. (Def.'s Br. Ex. E, Cruce Dep. 19:15-18). Cruce also informed Teichow that Plaintiff did not tell him of Plaintiff's plans to leave work. (Def.'s Br. Ex. E, Cruce Dep. 19:22-24).

The next day, Teichow met with Carla Mangum ("Mangum"), Defendant's human resources supervisor. During that conversation, Magnum was informed that Plaintiff left work without notice and that Plaintiff had recently made a comment threatening a production slowdown. (Def.'s Br. 6). Teichow then recommended to Marvin Pisarczyk ("Pisarczyk"), Defendant's managing director, that Plaintiff be terminated. (*Id*.). Pisarczyk agreed with Teichow's recommendation and decided to terminate Plaintiff. (*Id*. at 7). The decision was

2

made to terminate Plaintiff because Plaintiff left the building without notifying anyone, production had to be stopped while an investigation took place, people were paid overtime, someone had to be called in to take Plaintiff's spot, and it cost the company money. (Def.'s Br. Ex. D, Teichow Dep. 85:12-19). Plaintiff arrived at Defendant later that day, at which time he met with Mangum and Pisarczyk and was given his termination notice. (*Id.*). Plaintiff did not mention to Mangum or Pisarczyk during the meeting that Cruce gave him permission to leave work.

On January 7, 2005, Plaintiff drafted and mailed a letter to Pisarczyk. (Def.'s Br. Ex. H, 1/7/06 Chowdhury Letter). In the letter, Plaintiff asked if he could have his job back. (*Id.*). Plaintiff wrote:

> I wasn't expecting I will be terminated without any notification. I had spoken with Quality supervisor Shan and Floor supervisor Jody about my wage to increase from 45C to 50C. I had misunderstanding with them and for which I am sorry to apologize and it will never happen again later on. If you need to suspend me its okay I will wait to go back to work but please by reviewing your decision would you be pleased enough to withdraw the termination decision from my employment. I am very interested to go back to my work. In my employment history I never get termination for any of my inconveniences of work. *I was sick and I didn't notify anybody and get out from work*. I do apologize for my mistake. You could check my previous performance and attendance and could see how my background of my work performance.
>
> Please withdraw termination decision and reinstate me back to work for giving me one time more chance to do my work. And which I shall appreciate and will be grateful to you for ever. Please acknowledge my letter. Thank you.

(*Id.*) (emphasis added). Plaintiff also called Pisarczyk, asking for his job back. (Def.'s Br. Ex. A, Pisarczyk Dep. 42:21-25, 43:1-25). Plaintiff was not rehired by Defendant and this suit was initiated. (*Id.*).

Defendant argues that Plaintiff cannot show that he was treated differently than similarly

3

situated non-minority employees, and thus, fails the fourth element of his *prima facie* case. Defendant contends that Plaintiff asserts two instances of discrimination: (1) his 2004 salary increase and (2) his termination for leaving the premises. Defendant avers that Plaintiff fails to presents evidence of disparate treatment. In support of its position, Defendant claims that Plaintiff received the same pay increase as other similarly situated, non-protected employees. Defendant further supports its assertion by arguing that Plaintiff failed to present evidence that his termination was different from similarly situated, non-protected employees because Plaintiff was not able to identify any employees who left for the day during a shift. Defendant also argues that assuming Plaintiff established a *prima facie* case, it has met its burden of producing a legitimate, non-discriminatory reason for Plaintiff's termination; and Plaintiff has failed to prove Defendant's reason was a pretext.

Plaintiff responds that he does not have to show that the job was given to a similarly situated, non-protected person, but only show that the job was given to a person outside his protected class. Plaintiff argues that summary judgment should be precluded because Defendant's articulated reason for terminating Plaintiff does not support the relief it seeks. Plaintiff believes that questions as to whether he received permission to leave from his shift leader, and whether leaving for the day was what really motivated his termination, preclude summary judgment. Plaintiff also asserts that he does not have to present additional evidence that Defendant' firing decision was motivated by race. Plaintiff believes that he need only present that the proffered reason is false. Plaintiff also asserts that the same actor inference is unpersuasive because it is insufficient to warrant summary judgment for Defendant due to genuine issues of material fact.

Defendant replies that the scope for analyzing a summary judgment motion is greater than taking Plaintiff at his word. Defendant contends that this would emasculate the rule from any practical use. Defendant also claims that Plaintiff's only evidence that Defendant's reason for terminating Plaintiff was pretext is his assertion that he received permission from Cruce to leave, which is contradicted by his letter to the company. Defendant believes this constitutes a mere suggestion of a question of fact, which is insufficient to meet the burden of responding to a summary judgment motion. Defendant also argues that Plaintiff needs to show pretext with proof of actual discrimination to survive summary judgment. Defendant avers that the "pretext plus" standard applies here because if Plaintiff's burden of pretext is reached, the evidence in support is so weak that some showing of discrimination against Plaintiff must be presented.

**II.     ANALYSIS**

**A.     Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Id.* at 252. Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires that non-moving party to introduce "evidence of

evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

### 1.     Title VII Cases

"Intentional discrimination claims under Title VII can be proven by direct or circumstantial evidence." *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). In a direct evidence case involving mixed motives, *i.e.*, where the adverse employment decision could have been based on both legitimate and legally impermissible reasons, a plaintiff must prove that the defendant's discriminatory animus was more likely than not a 'substantial' or 'motivating' factor in the decision." *Millner v. DTE Energy Co.*, 285 F. Supp. 2d 950, 966 (E.D. Mich. 2003) (citing *Sniecinski v. Blue Cross and Blue Shield*, 469 Mich. 124, 133 (2003)). A plaintiff must also establish his "qualification or other eligibility and present direct proof that the discriminatory animus was causally related" to the action of the decisionmaker. *Id*. "Upon such presentation of proofs, an employer may not avoid trial by merely 'articulating' a nondiscriminatory reason for its action. Rather, 'the defendant may avoid a finding of liability by proving that it would have made the same decision even if the impermissible consideration had not played a role in the decision.'" *Id*.

In analyzing claims of unlawful discrimination under Title VII based upon indirect evidence, the Court must apply the following three-step *McDonnell Douglas* framework.

*Clayton v. Meijer, Inc.,* 281 F.3d 605, 610-11 (6th Cir. 2002). First, the plaintiff must establish a *prima facie* case of unlawful discrimination. *Id.* Once the plaintiff establishes a *prima facie* case of unlawful discrimination, a presumption of such unlawful discrimination arises; and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254-55 (1981). If the defendant meets this burden, the presumption of unlawful discrimination disappears. *See Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). The plaintiff must then demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for unlawful discrimination by establishing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. (*Id.*). If the plaintiff demonstrates that the defendant's proffered, legitimate reason is a pretext for unlawful discrimination, then the fact-finder may infer unlawful discrimination. *See Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 344 (6th Cir. 1997). Throughout the entire *McDonnell Douglas* framework, the plaintiff bears the burden of persuasion. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993). The shifting burdens of proof described in *McDonnell Douglas* are not applicable if a plaintiff can cite direct evidence of unlawful discrimination. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).

    **B.**     **Discussion**

        **1.**     **Direct Evidence**

When direct evidence of discrimination is present, the plaintiff does not need to meet the requirements of the *McDonnell Douglas prima facie* case. *Lapointe v. United Autoworkers Local 600*, 8 F.3d 376, 379 (6th Cir. 1993). However, "[i]t is the rare situation where direct

evidence is available." *Kline*, 128 F.3d at 348.

Plaintiff's Complaint does not allege, nor does Plaintiff provide in his response, any evidence of direct discrimination. Plaintiff does not argue that he is offering direct evidence of discrimination. Accordingly, the Court will not analyze the case under this standard.

### 2.      Circumstantial Evidence

#### *a.      Prima Facie Case*

Defendant contends that Plaintiff, as a matter of law, cannot establish a *prima facie* case of race discrimination based upon an alleged unlawful firing. Both parties agree that in order to establish a *prima facie* case of race discrimination under the *McDonnell Douglas* framework, the plaintiff must demonstrate: (1) he was a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the job.

However, the parties do not agree as to the fourth prong of the *prima facie* case. Defendant argues the fourth prong requires that for the same or similar conduct, the plaintiff was treated differently than similarly situated persons outside the protected class. Plaintiff, on the other hand, argues that he only has to show that the job was given to a person outside his protected class.

To establish a *prima facie* case of unlawful discrimination based upon race discrimination under *McDonnell Douglas* and *Burdine*, Plaintiff must show that he: (1) was a member of a protected class; (2) was discharged; (3) was qualified for the position; and (4) was replaced by a person outside the class. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). "A plaintiff may make out the fourth element of a prima facie case by showing that he was either replaced by someone outside the protected class or treated differently than similarly

9

situated, non protected employees." *Noble v. Brinker*, 391 F.3d 715, 728 (6th Cir. 2004). "Plaintiff creates a presumption of discrimination by establishing a prima facie case." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

In the instant case, no employees of Asian descent remained employed at Defendant after Plaintiff's adverse employment action. Therefore, under the "replaced by a non-protected person" element, no one from Plaintiff's class (Asian-American) could have replaced him. It follows that Plaintiff was replaced by someone from outside his class.

Accordingly, the Court should find that Plaintiff established his *prima facie* case.

     b.  Pretext

Once Plaintiff establishes a *prima facie* case, the burden of production shifts and Defendant must come forward with a legitimate, non-discriminatory explanation for its adverse employment decision. *Burdine*, 450 U.S. at 254. Here, Defendant contends that Plaintiff was fired because he left work without first getting approval from his supervisor.

When a legitimate, non-discriminatory explanation is given, a plaintiff must show then show the "presumptively valid reasons for his [discharge] were in fact a cover-up for a racially discriminatory reason." *McDonnell Douglas*, 411 U.S. at 805. In response to Defendant's legitimate, non-discriminatory reason for the decision, the plaintiff "must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." *Id.* at 256. A showing that the employer's proffered explanation is unworthy of credence can establish that the plaintiff was the victim of intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). The *prima facie* case, and the inferences that can be drawn from the *prima facie* case, can be considered when looking at whether the

defendant's explanation was pretextual. *Id*. Under Title VII analysis:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. . . . In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. . . . Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. . . . Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

*Reeves*, 530 U.S. at 147-48. "To raise a genuine issue of fact as to pretext and defeat a summary judgment motion . . ., the plaintiff must show one of the following: (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the action, or (3) that the proffered reason was insufficient to motivate the action." *Id*. (internal citations omitted). "Mere personal beliefs, conjecture and speculation are insufficient to support an inference of . . . discrimination." *Wexler v. White's Fine Furniture, Inc*., 317 F.3d 564, 584 (6th Cir. 2003).

In a light most favorable to Plaintiff, the Court finds that Plaintiff can not show pretext. Plaintiff argues that he told his line leader he was not feeling well, and that his line leader, Cruce, told him to "clean up, punch the card, [and] go home . . ." (Def.'s Br. Ex. B, Chowdhury Dep. 192: 16-25).[1] Plaintiff contends that this testimony, by itself, is enough to create a genuine

---

[1] Cruce testified that Plaintiff did not ask for permission to go home sick, nor did he give Plaintiff permission to leave work.
   Q: I got a phone call on my personal cell phone from Jody Teichow asking me where Showkat was. I told her the last I knew he was in the front office complaining about a five cent raise or over a nickle, and she said that for me to go outside to see if his vehicle was there. I went outside. His vehicle was gone. I asked her then how did she know his vehicle was gone. I asked if he was still in the shop. She said no, that Shawn had told her – called her and said she saw Showkat leave the premises, and *she asked me did he tell me that he was leaving. I said no, I*

11

issue of material fact.

However, Plaintiff wrote a letter to Pisarczyk on January 7, 2005, asking to be reinstated. The letter, in part, stated:

> I wasn't expecting I will be terminated without any notification. I had spoken with Quality supervisor Shan and Floor supervisor Jody about my wage to increase from 45C to 50C. I had misunderstanding with them and for which I am sorry to apologize and it will never happen again later on. . . . In my employment history I never get termination for any of my inconveniences of work. I was sick *and I didn't notify anybody* and get out from work. I do apologize for my mistake. You could check my previous performance and attendance and could see how my background of my work performance.

(Def.'s Br. Ex. H, 1/7/05 Chowdhury Letter) (emphasis added).  Plaintiff argues that the language of the letter is not a "clear and knowing" admission. (Pl.'s Resp. 7). Plaintiff also asserts that Plaintiff has functional fluency in the English language, but that it is his second language and a "partially literate written fragment does not even come close to bearing the weight Defendant assigns it." (Pl.'s Resp. Ex. 7).

The Court finds the meaning of Plaintiff's letter is clear on its face. In the letter, Plaintiff states that he was sick, did not notify anyone, and is sorry for his mistake. He does not make any mention of notifying Cruce in his letter. However, Plaintiff changed his story at his deposition, explaining that when he wrote "I didn't notify anybody," he was referring to Teichow, Mangum and Pisarczyk, not Cruce.

> Q:   Where it says I didn't notify anybody, is that true?
> A:   Yes, this is true. I don't talk with the supervisor because Jody [Teichow], she's not over there. And this – Carla [Mangum] told me you're supposed to see Marvin [Pisarczyk]. Marvin was over there this time. Marvin and

---

> *haven't seen him since he left to go to the front office* to complain about that five cents . . .

(Def.'s Br. Ex. E, Cruce Dep. 19, 13-25) (emphasis added).

12

> Carla.  Why didn't you talk to Marvin or Carla.  I said I don't see you on the floor.  And I spoke to my line leaders and he said stop the machine, clean up, and punch the card, go home, see you tomorrow.  And the next day I show up, you know.
> 
> A: But none of that with regards to what Rick Cruce says is in the letter, is it?
> 
> Q: Right.  I didn't write down nothing here.

(Pl.'s Resp. Ex. 1, Chowdhury Dep. 192:16-25).  Plaintiff's deposition testimony is directly contradicted by his letter written in conjunction with the incident.  While not communicating perfectly in the English language, the Court finds that Plaintiff was able to clearly convey his point in his letter.  "I didn't notify anybody" means exactly what it says.  Accordingly, the Court finds Plaintiff's belated testimony, that amounts to, "well, 'anybody' does not mean 'anybody,' just 'everybody,' except 'somebody,'" is so inherently incredible that it does not create a genuine issue of material fact.  Therefore, Defendant's Motion for Summary Judgment is granted.

Plaintiff offers additional evidence, in the form of disparate treatment regarding attendance enforcement and his raise, to show pretext.  Plaintiff proffers two additional arguments.  First, Plaintiff contends that even if Plaintiff did not get permission to leave work, Defendant's policy allows two unexcused and three excused absences – this was only Plaintiff's first unexcused absence – and Defendant violated its policy by terminating him.  Second, Plaintiff avers disparate treatment in his 2004 salary increase.

Under Defendant's Employee Policies, Procedures and Expectations, five days of vacation are accrued in an employee's first year.  Each employee also has five sick/personal days per full calendar year.  Defendant's employees are also allowed two unexcused absences and three excused absences.

Unexcused absences are absences where you have used up all your sick/personal

13

>and vacation days and you do not call in with in (sic) 15 minutes of your shift start time, you do not call in at all or you do not have supporting documentation to receive an excused absence.
>An excused absence is an absence that occurs after you have used up all your sick/personal and vacation days and you can provide supporting documentation such as a doctor's note, police report, court summons, etc.

(Def.'s Reply Ex. B, Employee Policies, Procedures and Expectations 1).  It appears that the excused and unexcused absences policy applies when an employee does not show up for work. In fact, Teichow testified on this question:

>Q:   So what's the policy with respect to [Plaintiff and his absence from work], if you know?
>A:   Well, his situation was he left the building, and that is not an excused absence because you punched in.  He just walked off the job.
>Q:   You are saying the policy was in regard to unexcused and excused absence doesn't apply?
>A:   That is correct.

(Def.'s Reply Ex. E, Teichow Dep. 70:21-25, 71:1-3).

The Court finds that the excused/unexcused absence policy does not cover Plaintiff's situation and thus does not support Plaintiff's contention that the proffered reason did not actually motivate the action, or that the proffered reason was insufficient to motivate the action.

Plaintiff contends that other employees were treated differently than he was in regards to the absence policy.  Plaintiff testified that non-Asian employees were late to work and were not terminated.  Plaintiff states that "Alex," "Mark," "Mark's" unnamed co-worker, Chris Biote, and Chris' unnamed co-worker, have come to work late for their shift.  (Pl.'s Resp. Ex. 1, Chowdhury Dep. 147:7-25, 148:1-9).  However, Plaintiff admittedly only has personal knowledge of Mark, Mark's unnamed co-worker, and Chris' unnamed co-worker, starting their shift late. (*Id*.).  Plaintiff testified that Chris' unnamed co-worker was supposed to punch in for his shift at 11:45, but was not always there on time. (*Id*.).

> . . . the plaintiff must show that the "comparables" are similarly-situated in all respects. Thus, to be deemed "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell*, 964 F.2d at 583.  However, as the above situations deal with employees arriving late or taking a longer break, the employees are not engaged in the same conduct.  Additionally, there is no evidence showing whether these employees are under the same supervisor.  Accordingly, the Court finds that Plaintiff is not similarly situated with Mark, Mark's unnamed co-worker, and Chris' unnamed co-worker.

Plaintiff also asserts disparate treatment regarding his regarding his January 2004 salary increase.  In the Complaint, Plaintiff alleges that during his employment he was treated differently from similarly situated Caucasian male employees.  (Compl. ¶ 12).  Plaintiff alleges that he "received a raise while employed with Defendant, and learned that his raise was less than that awarded to Caucasian male employees."  (Compl. ¶ 13).  Plaintiff testified as to this allegation in his deposition:

> Q: Looking at paragraph 13, and I'm reading, Plaintiff received a raise while employed with Defendant and learned that his raise was less than that awarded to Caucasian male employees.  I read that correctly?
> A: Yes.
> Q: Okay. The Caucasian male employee you're referring to is that Alex?
> A: I have to speak to Alex.
> Q: No.  Is the Caucasian male employee you're referring to –
> A: What does Caucasian mean?
> Q: White.
> A: White.  Okay.
>    . . . .
> Q: Right here.  Paragraph 13.  Read this.
> A: Plaintiff received a raise while employed with Defendant and learned that his raise was less than that awarded to Caucasian male employees.  Yes.
> Q: You're talking about Alex?

15

      A:      Yes.

(Pl.'s Resp. Ex. 1, Chowdhury Dep. 144:5-16, 145:2-7).  Plaintiff learned from "Alex" that Alex's salary increase was greater than his salary increase.

> Q:      This thing about Alex and the pay raise, do you believe you were discriminated against by Witzenmann?
> A:      I believe so.
> Q:      Okay.  How were you discriminated by Witzenmann with regards to your pay raise?
> A:      Because he is the white person.  I am the Bangladesh person.  That's why.
> Q:      Okay.  And do you believe he got paid more than you did?
> A:      That's what he told me.
> Q:      Okay.  Do you have any evidence besides what he told you?  Do you know what evidence means?
> A:      Yes.
> Q:      Do you have any evidence besides what he told you about being treated differently with regards to your pay raise?
> A:      No.

(Pl.'s Resp. Ex. 1, Chowdhury Dep. 58:3-22).

      Besides the above testimony, Plaintiff does not put forth any evidence that similarly situated Caucasian male employees received higher raises.  "Alex" must be comparable to Plaintiff "in all relevant aspects."  *Ercegovish v. Goodyear Tire*, 154 F.3d 344, 352 (6th Cir. 1998).  There is simply not enough evidence to support that Alex and Plaintiff are comparable in all relevant aspects.  There is no evidence that "Alex" is similarly situated as to the type of machine he worked on or his position within Defendant.  Defendant, on the other hand, proffers evidence of two similarly situated, non-protected employees who received similar raises.  Chuck Cawthon, an African-American, and Thomas Kutchuk, a Caucasian, both began at the same starting salary rate as Plaintiff, and received raises from $13.25 to $13.70, exactly like the Plaintiff.  (Def.'s Br. Ex. I, Cawthon Payroll/Status Change Notice, Kutchuk Payroll/Status Change Notice).  Their raises took effect the same day as Plaintiff's raise.  (*Id*.).  Furthermore,

Pisarczyk testified that Plaintiff received the same salary increase as other machine operators working on his shift. (Def.'s Br. Ex. A, Pisarczyk Dep. 95:20-25, 96:1-15). Pisarczyk also testified that he investigated Plaintiff's raise after Plaintiff questioned the amount of his raise, and found that Plaintiff received the appropriate amount. (Def.'s Br. Ex. A, Pisarczyk Dep. 94:10-17). At the time of the raise, both Cawthon and Kutchuk worked on the same machine as Plaintiff. (Def.'s Br. Ex. D, Teichow Dep. 30-32).

Accordingly, the Court finds that Plaintiff has not proffered evidence that his raise was different from similarly situated, non-protected employees.[2]

### III.    CONCLUSION

For the reasons stated, the Court GRANTS Defendant's Motion for Summary Judgment.

**SO ORDERED**.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: October 10, 2006

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on October 10, 2006.

S/Denise Goodine
Case Manager

---

[2] Plaintiff also offers evidence of an unaddressed climate of racial conflict and a doctor's note, which stated that Plaintiff was sick on the day he left work. This evidence does not support that he left work after receiving permission, nor is it evidence that Plaintiff intentionally discriminated against Plaintiff. Plaintiff's doctor advised Plaintiff to be on rest for three days for back pain and a skin infection. (Pl.'s Resp. 2; Pl.'s Resp. Ex. 8, Ahmed Dep. 12, 16, 17, 25).